1

2

3

4

5

6

7

8

9

10

MORGAN, LEWIS & BOCKIUS LLP
Thomas A. Duda (Bar No. 350991)
thomas.duda@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304-1124
Tel: +1.650.843.4000

Jeremy P. Blumenfeld (pro hac vice)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (pro hac vice)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

Attorneys for Defendants
JOHN MUIR HEALTH and BOARD OF
DIRECTORS OF JOHN MUIR HEALTH

MORGAN, LEWIS & BOCKIUS LLP
Matthew Sharbaugh (Bar No. 260830)
matthew.sharbaugh@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONAN NADO individually, and as a
representative of a Class of Participants and
Beneficiaries of the John Muir Health 403(b)
Plan,

Plaintiff,

vs.

JOHN MUIR HEALTH, and

BOARD OF DIRECTORS
OF JOHN MUIR HEALTH,

Defendants.

Case No. 3:24-cv-01632-AMO

**DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

Hearing Date: October 10, 2024
Time: 2:00 PM
Location: Courtroom 10, 19th Floor
Hon. Araceli Martínez-Olguín

Action Filed:  March 15, 2024

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on Thursday, October 10, 2024, at 2:00 PM or as soon thereafter as counsel may be heard, before the Honorable Araceli Martínez-Olguín of the San Francisco Courthouse of the above-captioned court, located at 450 Golden Gate Avenue, Courtroom 10 – 19th Floor, San Francisco, CA 94102, Defendants John Muir Health and the Board of Directors of John Muir Health (collectively, "JMH") will, and hereby do, move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the Class Action Complaint for Claims Under ERISA, 29 U.S.C. § 1132(a)(2) (the "Complaint") filed by Plaintiff Conan Nado, for failure to state a claim upon which relief can be granted.  This motion is based on the following grounds.

Plaintiff's claims for breach of the fiduciary duty of prudence (Count I) should be dismissed with prejudice pursuant to Rule 12(b)(6).  Specifically, Plaintiff's allegations of excessive recordkeeping fees fail to state a claim because the Complaint lacks any facts from which it can plausibly be inferred that Defendants' decision-making process was flawed, or even facts about the actual services provided to the JMH Plan.  Further, the Complaint does not engage in an apples-to-apples comparison of fees because it compares all of the fees paid to the JMH Plan recordkeepers against just some of the fees paid by the alleged comparator plans.  This same claim based on the same factual allegations was considered and rejected by the Ninth Circuit in *White v. Chevron Corp.*, 752 F. App'x 453 (9th Cir. 2018) and should be rejected here, too.  As the Ninth Circuit explained in that case: "the allegations showed only that Chevron could have chosen different vehicles for investment that performed better during the relevant period, or *sought lower fees for administration of the fund.*  None of the allegations made it more plausible than not that any breach of a fiduciary duty had occurred." *Id.* at 455 (emphasis added).

Plaintiff's claims for breach of the fiduciary duty of loyalty (Count II) should be dismissed with prejudice pursuant to Rule 12(b)(6) because controlling Treasury Department regulations, 26 C.F.R. § 1.401-7(a), expressly allow the very practice that Plaintiff challenges:  using forfeitures from the accounts of unvested participants to offset employer contributions; indeed, even the comparator plans Plaintiff identified in the Complaint engage in the very same practice.  And Plaintiff's ancillary fiduciary monitoring claims (Counts III and IV) should be dismissed with

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

1    prejudice pursuant to Rule 12(b)(6) because they are derivative of Plaintiff's underlying claims in

2    Counts I and II, which fail to state plausible claims for relief.

3        For these and other reasons explained more fully in the accompanying Memorandum of

4    Points and Authorities, Defendants request that the Court dismiss the Complaint.

5        This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and

6    Authorities, the pleadings on file herein, the exhibits attached to Defendants' Request for Judicial

7    Notice filed simultaneously with this Motion, and such arguments and admissible evidence as may

8    be presented at the time of the hearing.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -                                   MOTION TO DISMISS CLASS ACTION COMPLAINT
                                        CASE NO. 3:24-cv-01632-AMO

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 8

II.  STATEMENT OF ISSUES TO BE DECIDED ................................................ 9

III.  RELEVANT FACTUAL BACKGROUND ...................................................... 10

    A.  John Muir Health and the Plans ............................................................. 10

    B.  The Plan's Recordkeeping Services and Fees ........................................ 10

    C.  Seven "Comparator" Plans' RKA Fees ................................................. 11

    D.  The Plan's Use of Matching Contributions and Forfeitures. ................ 14

    E.  Plaintiff's Claims. ................................................................................... 15

IV.  LEGAL STANDARD ...................................................................................... 15

V.  ARGUMENT .................................................................................................... 16

    A.  The Amended Complaint Fails to State a Claim of Fiduciary Imprudence Based on Allegedly Excessive and Unreasonable Recordkeeping Fees. ............................... 16

        1.  Plaintiff's Allegations Fail to State a Claim Because Plaintiff Is Comparing All of the RKA Fees Paid by the JMH Plan to Just a Portion of the Fees Paid by the Comparator Plans. ........................... 17

        2.  Plaintiff's Allegations Fail to State a Claim Because the Proposed Comparator Plans Are Not, in Fact, Comparable. ...................... 19

        3.  Plaintiff's Allegations Fail to State a Claim Because Plaintiff Does Not Allege Sufficient Facts Demonstrating that the Plan Paid Fees "Excessive in Relation to the Specific Services Provided." ........................ 21

    B.  Plaintiff Fails to State a Duty of Loyalty Claim Based on the Plan's Use of Unvested, Forfeited Contributions. .................................... 23

    C.  Plaintiff Fails to State a Plausible Failure-to-Monitor Claim. .............. 24

VI.  CONCLUSION ................................................................................................. 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022)...................................................................... 12, 17, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................... 15

*Baumeister v. Exelon Corp.*,
    2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) ........................................... 21

*Bracalente v. Cisco Sys., Inc.*,
    2023 WL 5184138 (N.D. Cal. Aug. 11, 2023).......................................... 16, 25

*Cotter v. Matthews Int'l Corp.*,
    2023 WL 9321285 (E.D. Wis. Aug. 9, 2023), *report and recommendation*
    *adopted*, 2024 WL 218417 (E.D. Wis. Jan. 19, 2024).............................. 20

*First Nat'l Bank of Chicago v. Comptroller of Currency of U.S.*,
    956 F.2d 1360 (7th Cir. 1992).................................................................... 23

*Forman v. TriHealth, Inc.*,
    40 F.4th 443 (6th Cir. 2022)....................................................................... 21

*Fritton v. Taylor Corp.*,
    2022 WL 17584416 (D. Minn. Dec. 12, 2022) .......................................... 10, 22

*Gaines v. BDO USA, LLP*,
    663 F. Supp. 3d 821 (N.D. Ill. 2023) ......................................................... 22

*Guyes v. Nestle USA, Inc.*,
    2022 WL 18106384 (E.D. Wis. Nov. 21, 2022), *report and recommendation*
    *adopted*, 2023 WL 22629 (E.D. Wis. Jan. 3, 2023).................................. 22

*Guyes v. Nestle USA, Inc.*,
    2023 WL 9321363 (E.D. Wis. Aug. 23, 2023), *report and recommendation*
    *adopted*, 2024 WL 218420 (E.D. Wis. Jan. 19, 2024).............................. 20

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009)...................................................................... 10

*Jiaxing Super Lighting Elec. Appliance Co. v. Bruggeman*,
    2022 WL 17404300 (N.D. Cal. Dec. 2, 2022) ........................................... 10

*Kong v. Trader Joe's Co.*,
    2020 WL 7062395 (C.D. Cal. Nov. 30, 2020) ........................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Laabs v. Faith Techs., Inc.*,
    2023 WL 9321358 (E.D. Wis. Aug. 30, 2023), *report and recommendation*
    *adopted*, 2024 WL 218418 (E.D. Wis. Jan. 19, 2024) .......................................................... 20

*Lalonde v. Mass. Mut. Ins. Co.*,
    --- F. Supp. 3d ---, 2024 WL 1346027 (D. Mass. Mar. 29, 2024) ........................................ 21

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) ................................................................................................ 11

*Mateya v. Cook Grp. Inc.*,
    2023 WL 4608536 (S.D. Ind. June 16, 2023) ................................................................ 19, 21

*Matney v. Barrick Gold of N. Am.*,
    80 F.4th 1136 (10th Cir. 2023) ...................................................................................... 17, 21

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ......................................................................................... *passim*

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ............................................................................................... 17

*Miller v. Packaging Corp. of Am., Inc.*,
    2023 WL 2705818 (W.D. Mich. Mar. 30, 2023) ................................................................. 20

*Partida v. Schenker Inc.*,
    2024 WL 1354432 (N.D. Cal. Mar. 29, 2024) ......................................................... 15, 21, 25

*Probst v. Eli Lilly & Co.*,
    No. 122CV01106JMSMKK, 2023 WL 1782611 (S.D. Ind. Feb. 3, 2023) ............... 10, 20, 22

*Riley v. Olin Corp.*,
    2023 WL 371872 (E.D. Mo. Jan. 24, 2023) ........................................................................ 22

*Sigetich v. Kroger Co.*,
    2023 WL 2431667 (S.D. Ohio Mar. 9, 2023) ................................................................ 20, 22

*Singh v. Deloitte LLP*,
    650 F. Supp. 3d 259 (S.D.N.Y. 2023) ................................................................................. 22

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ............................................................................................. 21

*Walsh v. Allen*,
    2022 WL 256312 (W.D. Ky. Jan. 26, 2022) ....................................................................... 24

*Wehner v. Genentech, Inc.*,
    2021 WL 2417098 (N.D. Cal. June 14, 2021) .................................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

*Wehner v. Genentech, Inc.*,
  2021 WL 507599 (N.D. Cal. Feb. 9, 2021)........................................................................ 10, 21

*White v. Chevron Corp.*,
  2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)........................................................................ 22

*White v. Chevron Corp.*,
  2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir.
  2018) ........................................................................................................................................ 16

*White v. Chevron Corp.*,
  752 F. App'x 453 (9th Cir. 2018) ............................................................................ 8, 9, 16, 17

**Statutes**

29 U.S.C. § 1144(d) ........................................................................................................................ 23

Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*............................... *passim*

ERISA, 29 U.S.C. § 1002(34)........................................................................................................ 10

ERISA, 29 U.S.C. § 1104(a)(1)(A)........................................................................................... 15, 23

ERISA, 29 U.S.C. § 1104(a)(1)(B)................................................................................................ 15

**Other Authorities**

26 C.F.R. § 1.401-7(a) ................................................................................................................... 23

83 Fed. Reg. 34469 (July 20, 2018).............................................................................................. 24

IRM § 7.12.1.9, Forfeitures (02-16-2017), 2007 WL 9649931, also available at
  https://www.irs.gov/irm/part7/irm_07-012-001#idm139730277532416 ............................... 23

Rev. Rul. 67-68, 1967-1 C.B. 86 (1967)....................................................................................... 23

Rev. Ruling 71-313, 1971-2 C.B. 203, 1971 WL 26693 (1971) ................................................. 23

Rule 12(b)(6) ........................................................................................................... 9, 10, 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This action is part of a flood of lawsuits filed against 401(k) plan fiduciaries around the country, by the same law firm, seeking to pursue claims for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, for allegedly imprudent and disloyal management of a retirement plan—in this case, the John Muir Health 403(b) Plan (the "JMH Plan" or "Plan").  Specifically, the Complaint alleges that the Plan paid fees for recordkeeping and administration services (what the Complaint calls "Total RKA") that were higher than the fees paid by seven other plans.  Based on this, Plaintiff asks this Court to infer that JMH breached its fiduciary duties.  Plaintiff also alleges that the Plan's use of forfeitures from the accounts of unvested participants towards employer contributions for other plan participants instead of paying Plan expenses breached JMH's duty of loyalty.  For several reasons, Plaintiff's Complaint does not state a claim.

**First**, the Complaint's allegations are the same as those considered and rejected by the Ninth Circuit in *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) ("*White III*") and should be rejected here, too.  The plaintiffs in *White III* alleged that all recordkeepers provide the same services, that their plan paid over $160 per participant, and that a reasonable fee would have been $25 per participant.  The Ninth Circuit held that those allegations did not state a breach of fiduciary duty claim because "the allegations showed only that Chevron could have chosen different vehicles for investment that performed better during the relevant period, or *sought lower fees for administration of the fund*.  None of the allegations made it more plausible than not that any breach of a fiduciary duty had occurred." *Id.* (emphasis added).  The same is true here.

**Second**, at a more granular level, the Complaint fails to state a claim because Plaintiff is comparing the *total fees* paid by the Plan here for Total RKA services against just *some of the fees* paid by the comparator plans for Total RKA services.  In fact, the Department of Labor ("DOL") Form 5500s that Plaintiff relies on show that the comparator plans paid additional recordkeeping fees that Plaintiff's Complaint ignores.  This violates the Complaint's own allegations that when evaluating the reasonableness of recordkeeping fees, one "must identify *all* fees . . . being paid to

the plan's recordkeeper." (Compl. ¶ 80 (emphasis added).)  Without accounting for those additional fees, the Complaint provides no basis for inferring that the Plan's fees were unreasonable.  In fact, the Complaint contains *no allegations* about the assets held by any of the comparator plans at any point in time.  Without those facts, the Complaint does not even allege that the comparator plans are, in fact, comparable to the JMH Plan for purposes of the comparisons alleged.

**Third**, Plaintiff's recordkeeping claim does not allege *any* facts about the actual quality and scope of services received by the JMH Plan or the comparators.  As in *White III*, there can be no inference of fiduciary misconduct under these circumstances.

**Fourth**, Plaintiff's duty of loyalty claim challenging the Plan's use of unvested, forfeited contributions to pay future contributions fails because (1) it is contrary to decades-old regulations authorizing the precise conduct Plaintiff challenges; (2) Plaintiff does not allege that using forfeitures violates the terms of the JMH Plan or that he has not received all of the employer contributions to which he was entitled under the JMH Plan; and (3) even Plaintiff's "comparator" plans report using forfeitures in exactly the same way.

**Finally,** because Plaintiff's failure-to-monitor claims are derivative causes of action that depend on his other claims, they fail for the same reasons.

For all these reasons and those explained more fully below, JMH respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Plaintiff's claims for breach of the fiduciary duty of prudence (Count I) should be dismissed with prejudice pursuant to Rule 12(b)(6) because the Complaint lacks any facts from which it can plausibly be inferred that Defendants' decision-making process was flawed.

2.   Whether Plaintiff's claims for breach of the fiduciary duty of loyalty (Count II) should be dismissed with prejudice pursuant to Rule 12(b)(6) because the Complaint lacks any facts from which it can plausibly be inferred that Defendants' application of unvested, forfeited contributions from JMH to future Plan contributions was improper.

3.   Whether Plaintiff's ancillary fiduciary monitoring claims (Counts III and IV) should be dismissed with prejudice pursuant to Rule 12(b)(6) because they are derivative of Plaintiff's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

underlying claims in Counts I and II, which fail to state plausible claims for relief.

### III.     RELEVANT FACTUAL BACKGROUND[1]

####     A.     John Muir Health and the Plans

JMH  is a health system headquartered in Walnut Creek California that includes two of the largest medical centers in Contra Costa County, California.  (Compl. ¶ 34.)  One of the ways JMH helps its employees prepare for retirement is through the Plan—an individual-account, defined-contribution plan under ERISA, 29 U.S.C. § 1002(34). (*Id.* ¶¶ 1, 6.)  The Plan allows for employees to save for retirement on a tax-deferred basis and is funded by a combination of participant contributions and JMH's addition to those retirement savings through matching contributions.  (*Id.* ¶ 164.)  JMH is the Plan's sponsor and administrator.  (*Id.* ¶ 7.)

####     B.     The Plan's Recordkeeping Services and Fees

Like all 403(b) plans, there are expenses associated with the Plan.  (*See, e.g.*, Compl. ¶¶ 3, 6, 16, 18, 46, 73.)  The Complaint identifies three categories of RKA services provided by all recordkeepers for ERISA 403(b) and 401(k) plans.  (*Id.* ¶¶ 43-45.)

The first category is "Total RKA," which includes (a) recordkeeping; (b) transaction processing; (c) administrative services related to converting a plan from one recordkeeper to another; (d) participant communications; (e) maintenance of an employer stock fund; (f) plan document services "which include updates to standard plan documents to ensure compliance with new regulatory and legal requirements"; (g) compliance support; (h) compliance testing; and (i)

---

[1] This summary comes from the Complaint's allegations or from publicly available documents referenced in or incorporated by the Complaint (*i.e.*, the Plan's and alleged comparators' Form 5500s in relevant years) that are appropriately considered on a Rule 12(b)(6) motion and subject to judicial notice.  (Compl. ¶¶ 61, 106-07.)  *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009); *Probst v. Eli Lilly & Co.*, No. 122CV01106JMSMKK, 2023 WL 1782611, at *11 (S.D. Ind. Feb. 3, 2023) ("Because [plaintiff] relies on the Form 5500s" of "13 comparator plans" and "provides information from them in her Amended Complaint, the Court finds it appropriate to consider them in ruling on the Motion to Dismiss" and noting that "the Form 5500s are public records, of which the Court may take judicial notice."); *Jiaxing Super Lighting Elec. Appliance Co. v. Bruggeman*, 2022 WL 17404300, at *2 (N.D. Cal. Dec. 2, 2022) (on Rule 12(b)(6) motion, court may consider "[d]ocuments whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading"); *Kong v. Trader Joe's Co.*, 2020 WL 7062395, at *3 (C.D. Cal. Nov. 30, 2020) (considering DOL Form 5500s); *Wehner v. Genentech, Inc.* ("*Wehner I*"), 2021 WL 507599, at *3 (N.D. Cal. Feb. 9, 2021) (same); *Fritton v. Taylor Corp.*, 2022 WL 17584416, at *6 (D. Minn. Dec. 12, 2022) (same).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

trustee/custodian services.  (*Id.* ¶ 44.)  For the Plan, Total RKA services include "recordkeeping, legal, accounting, trustee, and other administrative fees and expenses associated with maintaining the Plan."  (*Id.* ¶ 46.)

The second type of RKA is "A La Carte" services that individual participants can elect to receive, including, among others, (a) loan processing; (b) brokerage-account services; (c) distribution services; and (d) qualified-domestic-relations-order services.  (*Id.* ¶ 56.)  And the third type is "ad hoc" services "which are transaction fees and other administrative fees[.]"  (*Id.* ¶ 58.)

Plans can pay for recordkeeping through direct payments or indirectly through a process called "revenue sharing"—frequently called "indirect compensation."  (Compl.  ¶¶ 61, 68-69, 99, 107.)  Revenue sharing is an "arrangement allowing mutual funds to share a portion of the fees that they collect from investors with entities that provide services to the mutual funds," such as recordkeepers.  *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 907–08 (7th Cir. 2013).

According to Plaintiff, any analysis of recordkeeping fees "must identify all fees, including direct compensation and revenue sharing being paid to the plan's recordkeeper."  (*Id.* ¶ 80.)  The Complaint alleges that the Plan paid an average annual Total RKA fee of $129 per participant from 2018-2023, but should have paid a "reasonable rate" of $25 per participant during that period.[2]  In 2022, the Plan had 7,177 participants and $1,050,759,092 in assets.  (*Id.* ¶¶ 37-38.)

**C.      Seven "Comparator" Plans' RKA Fees**

Plaintiff alleges that in 2018, participants in seven "other comparable plans of similar size" paid "Total RKA Fees" between $28 and $42 annually for Total RKA services of "a materially similar level and quality." (Compl. ¶ 106.)  Plaintiff's calculations for the comparators are based on the plans' Form 5500s, but do not include the amounts paid to those plans' recordkeepers by their employers (for plan services) because those employer-paid amounts are not included on Form 5500s.  And the Complaint does not allege any facts about how much these plans paid in any other years aside from 2018.  Each of those plans is discussed below.

---

[2] The Complaint includes conflicting allegations that the Plan paid an average Total RKA fee of $132 (Compl. ¶ 105) or $129 per participant from 2018 through 2023 (*id.* ¶¶ 50, 105, 154) and that the Plan should have paid a reasonable rate of either $25 (*id.* ¶ 105) or $36 per participant (*id.* ¶¶ 149, 152.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

Daimler Trucks Plan. The Complaint alleges that the Daimler Trucks North America, LLC UAW Retirement Savings Plan (the "Daimler Truck Plan") had 6,804 participants and allegedly paid $36 per participant to Voya in 2018, for a total fee to Voya of $246,614.  (Compl. ¶ 106.)  However, these amounts do not reflect all of the fees paid for "Total RKA" services, as defined by the Complaint.  First, the Daimler Trucks Plan uses Bank of New York Mellon ("BNYM")—not Voya—as trustee, so the fees paid *to Voya* by definition do not include all of the "Total RKA" services.[3]  Ex. 1, Daimler Trucks Plan 2018 Form 5500, App. 027 ("BNYM (the Trustee) holds all of the Plan's investments and also serves as the trustee for the Plan.").  Second, the Form 5500 for the Daimler Trucks Plan explains that the plan's "expenses are paid either by the Plan or the Company," and in 2018, "[e]xpenses that [we]re paid directly by the Company approximate[d] $1.0 million . . . for the year[] ended December 31, 2018," and were "excluded from these financial statements."  *Id.* at App. 030.  That means the Total RKA services for the Daimler Trucks Plan actually were $1.246 million in 2018 ($246,614 + $1,000,000).  That equals *$183 per participant* (1.246 million / 6,804 participants).

BCBS of Tennessee Plan.  In 2018, the BCBS of Tennessee Plan (the "BCBSTN Plan") had 7,550 participants and allegedly paid $33 per participant to Fidelity (totaling $250,409).  (Compl. ¶ 106.)  But again, that does not include "all fees" paid for Total RKA services, as Plaintiff alleges is required.  (*Id.* ¶ 80.)  For example, the BCBSTN Plan also paid $358,678 to Strategic Advisors, Inc., a subsidiary of Fidelity.  Ex. 2, BCBSTN Plan 2018 Form 5500, App. 049.  *See also Albert v. Oshkosh Corp.*, 47 F.4th 570, 575 (7th Cir. 2022) (explaining that Strategic Advisors Inc. "is a subsidiary of Fidelity").  In addition, the Form 5500 identifies the "Vanguard Fiduciary Trust Company" as having received indirect compensation, but Plaintiff ignores those in his calculations.  Ex. 2, BCBSTN Plan 2018 Form 5500, App. 047.  And again, the Complaint ignores that "[c]ertain administrative expenses for the [plan] are paid by the Company."  *Id.* at App. 073.  In other words, Plaintiff is only including a portion of the fees paid for "Total RKA" for the BCBSTN Plan.

---

[3] For the Court's convenience and ease of reference, Exhibits 1 to 9 to this Memorandum of Points and Authorities have been attached to JMH's accompanying Request for Judicial Notice ("RJN") (filed simultaneously herewith) in a single appendix with pages numbered App. 001–422. Citations herein are to the particular exhibit attached to the RJN and page number of the appendix ("App.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 12 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

<u>Boston Consulting Group, Inc. Plan</u>.   In 2018, the Boston Consulting Group, Inc. Employees' Savings Plan and Profit Sharing Retirement Fund (the "BCG Plan") had 8,067 participants and allegedly paid $42 per participant to Vanguard (totaling $336,660).   (Compl. ¶ 106.)  But that does not include all fees paid to all entities for Total RKA services in 2018.  First, the Form 5500 explains that "[t]he Company provides certain accounting and administrative services to the Plan at no charge and pays for the annual audit of the Plan." Ex. 3, BCG Plan 2018 Form 5500, App. 123.  Those services are part of Total RKA but are not included in Plaintiff's calculations.  Second, the Form 5500 reflects that Vanguard manages over $800 million of BCG Plan assets, but Plaintiff ignores those fees in his calculations too.  *Id.* at App 126; (Compl. ¶ 80) (a prudent fiduciary "must identify all fees, including direct compensation and revenue sharing being paid to the plan's recordkeeper").

<u>IGT Plan</u>.  In 2018, the IGT 401(k) Retirement Savings Plan (the "IGT Plan") had 8,369 participants and allegedly paid $38 per participant to Fidelity (totaling $319,326).  (Compl. ¶ 106.)  But that does not include all fees paid to all entities for Total RKA services in 2018.  In fact, the Form 5500 reflects that, not including indirect compensation, the IGT Plan paid $641,894 for administrative expenses, including fees to Strategic Advisors, Inc., Blum Shapiro, and Mercer Investment Consulting LLC.  Ex. 4, IGT Plan 2018 Form 5500, App. 134-35, 156, 167, 173.  That works out to $77 per participant, and, again, that does not include "[c]ertain expenses of maintaining the Plan [that] are paid directly by the Company."  *Id.* at App. 170.

<u>Bausch Health Companies Plan</u>.  In 2018, the Bausch Health Companies Inc. Retirement Savings Plan (the "Bausch Plan") had 8,902 participants and allegedly paid $36 per participant to Fidelity (totaling $322,496).  (Compl. ¶ 106.)  But that does not include all fees paid for Total RKA, because it ignores nearly $250,000 paid to Strategic Advisors, Inc. and Insero & Company.  Ex. 5, Bausch Plan 2018 Form 5500, App. 182.  And as with Plaintiff's other comparators, the Form 5500 also makes clear that "[c]ertain other administrative expenses such as legal, *recordkeeping* and accounting services are provided at the expense of the Company."  *Id.* at App. 206 (emphasis

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

added).[4]   In other words, the $36 per participant alleged in the Complaint does not include all of the fees paid for Total RKA for this plan.

Children's Medical Center of Dallas Plan.  In 2018, the Children's Medical Center of Dallas Employee Savings Plan 403(b) (the "Dallas Children's Plan") had 9,356 participants and allegedly paid $36 per participant to Fidelity (totaling $337,416).  (Compl. ¶ 106.)  But that does not include all fees paid for Total RKA services in 2018.  Again, that plan's Form 5500 explains that the plan only pays the administrative expenses that Children's Health does not pay.  Ex. 7, Dallas Children's Plan 2018 Form 5500, App. 301. ("Administrative expenses *that are not paid by Children's Health* are paid for by the Plan.").  In other words, Plaintiff's calculations for this plan do not include "all fees" paid to the plan's recordkeeper, as he alleges is required.  (Compl. ¶ 80.)

Vibra Healthcare Plan.  In 2018, the Vibra Healthcare Retirement Plan (the "Vibra Plan") had 9,750 participants and allegedly paid $28 per participant to Great-West (totaling $277,532).  (Compl. ¶ 106.)  But that does not include all fees paid to all entities for Total RKA services in 2018 because again, the Form 5500 explains that "[c]ertain expenses of maintaining the Plan are paid directly by the Plan sponsor and are excluded from these financial statements."  Ex. 8, Vibra Healthcare Retirement Plan 2018 Form 5500, App. 345.

**D.     The Plan's Use of Matching Contributions and Forfeitures.**

JMH makes matching contributions to the Plan in amounts that vary with a participant's entry date into the Plan and vest according to a participant's years of qualified service.  (Compl. ¶¶ 164-68.)  Unvested contributions made by JMH are forfeited and "retained in the Plan and are used for future employer contributions."  (*Id.* ¶ 170.)  Plaintiff alleges that from 2018-2022, JMH used "at least $576,000" of unvested, forfeited contributions "to reduce the Company's contributions"

---

[4] As explained above, Plaintiff purports to compare the Plan's fees in 2018-2023 against the comparator plans' fees in just 2018.  That is not an apples-to-apples comparison.  For example, the administrative expenses for the Bausch Plan in 2021 were $1,001,660.  Ex. 6, Bausch Plan 2021 Form 5500, App. 251.  The Bausch Plan had 4,761 participants in 2021.  *Id.* at App. 225.  That works out to $210 per participant, 62% more than the $129 average per participant fee the Complaint alleges the JMH Plan paid.  (Compl. ¶ 105.)  And that still does not include other Total RKA fees paid by directly by the employer.  Ex. 6, Bausch Plan 2021 Form 5500, App. 254 ("Certain other administrative expenses, such as legal, *recordkeeping* and accounting services are provided at the expense of the Company" (emphasis added)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

to the Plan, but contends that "[t]hat money should have been applied to annual Plan expenses and [to] reduce participant Total RKA." (*Id.* ¶¶ 171-76.)

Notably, the Form 5500s for four of Plaintiff's seven comparator plans reflect that they similarly used forfeitures to pay for contributions for other employees. *See* Ex. 1, Daimler Trucks Plan 2018 Form 5500, App. 029 ("For the years ended December 31, 2018 and 2017, employer contributions were reduced by approximately $92,000 and $58,000 from forfeited nonvested accounts, respectively."); Ex. 2, BCBSTN Plan 2018 Form 5500, App. 077 ("Forfeitures are used to reduce employer contributions. Forfeitures used to reduce Company contributions were $606,334 in 2018."); Ex. 5, Bausch Plan 2018 Form 5500, App. 205 ("During 2018, approximately $1,533,000 of forfeitures were used to reduce employer contributions."); Ex. 8, Vibra Plan 2018 Form 5500, App. 344 ("During 2018 and 2017, respectively, employer contributions were reduced by $48,511 and $119,802" by using forfeitures).

### E.   Plaintiff's Claims.

The Complaint asserts four claims. In Count I, Plaintiff alleges that JMH breached the fiduciary duty of prudence under ERISA, 29 U.S.C. § 1104(a)(1)(B), because the Plan paid excessive fees for Total RKA services. (Compl. ¶¶ 193-203.) In Count II, Plaintiff alleges that JMH breached the fiduciary duty of loyalty under ERISA, 29 U.S.C. § 1104(a)(1)(A), by using forfeited contributions to offset employer contributions. (*Id.* ¶¶ 204-08.) And in Counts III and IV, Plaintiff asserts that JMH failed to adequately monitor the Plan's other (unidentified) fiduciaries with respect to Total RKA fees and the use of forfeited contributions. (*Id.* ¶¶ 209-22.)

## IV.   LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Put differently, "the non-conclusory 'factual content' and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Partida v. Schenker Inc.*, 2024 WL 1354432, at *7 (N.D. Cal. Mar. 29, 2024) (quotation omitted). ERISA's "test of prudence" asks whether the retirement plan fiduciaries, "at the time they engaged in the challenged [activity], employed the appropriate methods to investigate the merits of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

investment." *White v. Chevron Corp.* ("*White II*"), 2017 WL 2352137, at *13 (N.D. Cal. May 31, 2017), *aff'd*, *White III*, 752 F. App'x 453 (quotations and citation omitted).  To nudge a claim from conceivable to plausible, a plaintiff must allege factual allegations supporting an inference that the fiduciaries' "*decisionmaking process*" was unlawful.  *Id.* (emphasis added).

To satisfy this standard, an ERISA complaint must set forth either direct allegations that the fiduciary's management process was flawed or circumstantial allegations permitting the court to infer "more than the mere possibility of misconduct."  *Wehner v. Genentech, Inc. ("Wehner II")*, 2021 WL 2417098, at *4 (N.D. Cal. June 14, 2021).  Because Plaintiff here relies on circumstantial allegations, "those allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct, *i.e.*, the facts alleged must be suggestive of, rather than merely consistent with, a finding of misconduct."  *Bracalente v. Cisco Sys., Inc.*, 2023 WL 5184138, at *3 (N.D. Cal. Aug. 11, 2023) (emphasis in original) (citation omitted); *see also White III*, 752 F. App'x at 454 ("[T]he allegations showed only that Chevron could have chosen different vehicles for investment that performed better during the relevant period, or sought lower fees for administration of the fund.  None of the allegations made it more plausible than not that any breach of a fiduciary duty had occurred.") (quotations and citation omitted).  The Complaint falls short of this standard.

## V.  ARGUMENT

### A.  The Amended Complaint Fails to State a Claim of Fiduciary Imprudence Based on Allegedly Excessive and Unreasonable Recordkeeping Fees.

Plaintiff's allegations are the same as those considered and rejected by the Ninth Circuit in *White III*.  *See* Ex. 9, *White III* Amended Complaint, App. 356.  There, the plaintiffs alleged (among many other paragraphs) that:

> "The market for recordkeeping is highly competitive. There are numerous vendors in the marketplace who are equally capable of providing a high level of service to a large 401(k) plan like the Plan[.]"  *Id.* ¶ 112, App. 397.

> "Based on the nature of administrative and recordkeeping services provided by Vanguard, the Plan's participant level (37,500–40,000), and the recordkeeping market, the outside limit of a reasonable recordkeeping fee would have been on average $25 per participant between 2010 and 2015."  *Id.* ¶ 121, App. 401.

> "Based on the direct compensation levels shown on the Plan's Form 5500 filed with the Department of Labor, and the estimated revenue sharing or indirect

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 16 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

1
2
3

> compensation Vanguard received from its proprietary Investor share mutual fund options and non-Vanguard mutual funds, the Plan paid approximately $167 to $181 per participant in 2010 and 2011, as much as 624% more than a reasonable fee for these services, resulting in millions of dollars in unreasonable recordkeeping fees paid to Vanguard[.]" *Id.* ¶ 122, App. 401.

4

At bottom, these are the same allegations that Plaintiff makes here. The district court dismissed

5

that claim, and the Ninth Circuit affirmed because "the allegations showed only that Chevron could

6

have . . . sought lower fees for administration of the fund. None of the allegations made it more

7

plausible than not that any breach of a fiduciary duty had occurred." *White III*, 752 F. App'x at

8

454. The same result is warranted here, for the same reasons. The Court need not go any further.

9

Digging deeper, moreover, the facts alleged here do not support a plausible inference of

10

imprudence. At a bare minimum, "[t]he key to stating a plausible excessive-fees claim is to make

11

a like-for-like comparison." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir.

12

2022). In other words, "to raise an inference of imprudence through price disparity, a plaintiff has

13

the burden to allege a meaningful benchmark." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136,

14

1148 (10th Cir. 2023); *Matousek*, 51 F.4th at 278 ("The key to nudging an inference of imprudence

15

from possible to plausible is providing a sound basis for comparison—a meaningful benchmark");

16

*Albert*, 47 F.4th at 581-82 (fees claim requires "a sound basis for comparison"—a "meaningful

17

benchmark" for comparison); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).

18

Plaintiff's Complaint does not even satisfy this standard because (1) Plaintiff is comparing

19

all of the RKA fees paid by the JMH Plan to just some of the RKA fees paid by the comparator

20

plans; (2) the Complaint does not allege any facts about the asset size of the comparator plans to

21

even know if they are comparable; and (3) Plaintiff does not allege any non-conclusory facts

22

demonstrating the scope and quality of the Total RKA services the JMH Plan and its alleged

23

comparators received.

24
25
26

### 1. Plaintiff's Allegations Fail to State a Claim Because Plaintiff Is Comparing All of the RKA Fees Paid by the JMH Plan to Just a Portion of the Fees Paid by the Comparator Plans.

27

The premise of Plaintiff's recordkeeping fee claim is that all plans receive the same

28

commoditized Total RKA services. Plaintiff also alleges that any evaluation of fees must account

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 17 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

for "all fees" paid to the recordkeeper. (*Id.* ¶ 80.) These allegations render Plaintiff's fee comparisons in the Amended Complaint meaningless because Plaintiff is not doing what the Complaint says—and what caselaw holds—is required. That is, Plaintiff is not comparing *all* the fees paid by the JMH Plan to all the fees paid by the comparator plans, as required to satisfy the meaningful-benchmark standard.  Instead, Plaintiff is comparing all the "Total RKA" fees she alleges were paid by the JMH Plan to just some of the "Total RKA" fees paid by the comparator plans.  *Matousek*, 51 F.4th at 279-80 (affirming dismissal of allegations where the complaint was comparing total fees paid by the challenged plan for all RKA services against just some fees paid by other plans because this would be a "mismatch between [the recordkeeper's] total compensation, which includes everything it does for [the defendant's] plan, and the industry-wide averages that reflect only basic recordkeeping services").

    As explained above (*supra* § III.C), the Form 5500s on which Plaintiff relies for the comparator plans show that they paid additional Total RKA fees that Plaintiff ignores.  For each of the comparators, the plan sponsor paid some of the Total RKA fees, but those fees are not included in Plaintiff's calculations.  That is like saying that person X who bought a car for $30,000 paid too much because person Y only paid $5,000, while ignoring that person Y's parents also paid $25,000 towards the purchase.  That is not an apples-to-apples comparison.  And for most of the comparators, Plaintiff only includes the fees paid to one entity even though other entities also provided services that fall within Plaintiff's own definition of "Total RKA" services.  Continuing the analogy, that is like saying that person X bought a fully loaded car from Toyota for $30,000 and person Z only paid Toyota $25,000, but person Z separately had to buy tires from Firestone, a surround sound system from Bose, and a remote start from Best Buy.

    These repeated mismatches—between Plaintiff's allegations about the total fees paid by the JMH Plan against just some of the fees paid by the comparator plans—are exactly the sort of mismatch the Eighth Circuit considered and rejected in *Matousek*.  There, the plaintiffs benchmarked the recordkeeping fees for defendants' plan to "industry-wide average" fees that reflected the cost for "standard recordkeeping services."  51 F.4th at 279–80.  But the Form 5500s for the challenged plan showed that the purportedly excessive fees paid by the challenged plan

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 18 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

encompassed much more than just "standard recordkeeping services"—those fees also included services like investment advice, trade commissions, and investment management fees. *Id*. The Eighth Circuit concluded that the "industry averages" plaintiffs cited could not support the excessive fees claim because those averages "measure the cost of the typical 'suite of administrative services,' not anything more." *Id.* at 280. This would lead to a "mismatch between [the recordkeeper's] total compensation, which includes everything it does for [the defendant's] plan, and the industry-wide averages that reflect only basic recordkeeping services." *Id.*

The same problem exists here. Plaintiff alleges that all the plans—the JMH Plan and the comparators—receive the same suite, type, and level of services. But to avoid the "mismatch" predicament from *Matousek*, Plaintiff would have to compare *all* the fees paid by the JMH Plan to *all* the fees paid for Total RKA services provided to the comparator plans, no matter who pays those fees and who provides those services. He does not do that. That discrepancy causes the same "mismatch" problem as in *Matousek* and renders his comparisons meaningless. *Matousek*, 51 F.4th at 279 ("In plain English, the per-participant fees cover more than just standard recordkeeping services. For a benchmark to be 'sound' and 'meaningful' here, it must do the same."); *Mateya v. Cook Grp. Inc.*, 2023 WL 4608536, at \*7 (S.D. Ind. June 16, 2023) ("[T]he problem here is not one of accuracy . . . but one of comparability—it matters that the [defendant plan's] numbers are increased over its Form 5500 value by adding in some costs and [comparator plans'] numbers are decreased by removing those same costs").

Plaintiff's factual allegations do not allow the inference that the JMH Plan's fees were unreasonable, or outside "the range of reasonable judgments" that fiduciaries may permissibly make. *Albert*, 47 F.4th at 577; *Mateya*, 2023 WL 4608536, at \*8 ("Without consistently determining which fees paid by different plans count, the various plans cannot be compared in a way that states a plausible claim").

### 2. Plaintiff's Allegations Fail to State a Claim Because the Proposed Comparator Plans Are Not, in Fact, Comparable.

Plaintiff's recordkeeping claim also fails because the Complaint does not allege facts that the comparator plans are, in fact, comparable. While Plaintiff alleges the JMH's Plan's assets in

2022 (just over $1 billion), he does not allege the JMH Plan's assets in 2018 (the year of his comparison), nor does he allege the assets held by any of the comparator plans at any point in time. In other words, there is no basis in the Complaint for knowing if the comparator plans are, in fact, comparable to the JMH Plan.  Putting everything else aside, imprudence cannot be inferred "unless *similarly sized plans* spend less on the same services." *Matousek*, 51 F.4th at 279 (emphasis added). Consequently, courts routinely dismiss claims where a complaint does not allege facts that that the comparator plans have similar asset sizes to the challenged plans.  *See, e.g.*, *Guyes v. Nestle USA, Inc.*, 2023 WL 9321363, at *5 (E.D. Wis. Aug. 23, 2023) ("Because the plans are not similarly sized, Guyes' trend line cannot be used to derive a reasonable fee, and she therefore has no basis to allege that the plan's recordkeeping fees were excessive relative to the services rendered."), *report and recommendation adopted*, 2024 WL 218420 (E.D. Wis. Jan. 19, 2024); *Cotter v. Matthews Int'l Corp.*, 2023 WL 9321285, at *5 (E.D. Wis. Aug. 9, 2023) (rejecting "the so-called comparators" because they "vary significantly in size" and could not "be used to derive a reasonable fee" such that plaintiff "therefore has no basis to allege that the plan's recordkeeping fees were excessive relative to the services rendered"), *report and recommendation adopted*, 2024 WL 218417 (E.D. Wis. Jan. 19, 2024); *Laabs v. Faith Techs., Inc.*, 2023 WL 9321358, at *6 (E.D. Wis. Aug. 30, 2023) (rejecting comparators with different participant and asset sizes, including comparator plan that "had over fifty percent more assets" than the plan in question, showing that plaintiff "is not comparing apples to apples"), *report and recommendation adopted*, 2024 WL 218418 (E.D. Wis. Jan. 19, 2024)*; Sigetich v. Kroger Co.*, 2023 WL 2431667, at *10 (S.D. Ohio Mar. 9, 2023) (noting that "differences in size call into question Plaintiff's comparable plans and whether the Kroger Plan's recordkeeping fees were excessive relative the services rendered"); *Miller v. Packaging Corp. of Am., Inc.*, 2023 WL 2705818, at *6 (W.D. Mich. Mar. 30, 2023) (similar); *Probst*, 2023 WL 1782611, at *11 (deeming "implausible" the plaintiff's comparators because the plans "are not all similar in size to the Plan, nor do they have similar assets").  This Court should do the same.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 20 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

3. **Plaintiff's Allegations Fail to State a Claim Because Plaintiff Does Not Allege Sufficient Facts Demonstrating that the Plan Paid Fees "Excessive in Relation to the Specific Services Provided."**

The Complaint fails to state a plausible imprudence claim for the independent reason that it contains no factual allegations whatsoever about what specific services were rendered by any particular recordkeeper to any particular plan. As this Court recently held, to plausibly plead a claim for excessive recordkeeping fees, Plaintiff must allege facts regarding the specific services provided and how the "fees were excessive in relation to the specific services [] provided to the specific plan at issue." *Partida*, 2024 WL 1354432, at *8; *Wehner I*, 2021 WL 507599, at *5 (a plaintiff must allege that the fees were "excessive in relation to the *specific* services [] provided to the *specific plan* at issue.") (emphases in original).[5]

Here, the Complaint alleges no fact about the actual types or quality of services, merely suggesting in conclusory fashion that they are fungible. Those allegations were not sufficient in *Partida* and are not sufficient here for the same reasons. Indeed, under *Matousek*, not only must the plans be similarly sized, but the services must be "the same." *Matousek*, 51 F.4th at 279. And the complaint must plead *facts*—not conclusions—demonstrating the similarity of the services being compared. Where ERISA plaintiffs fail to allege facts to plausibly establish this foundational point, courts around the country rightly and routinely dismiss those complaints. *See, e.g., Lalonde v. Mass. Mut. Ins. Co.*, --- F. Supp. 3d ---, 2024 WL 1346027, at *10 (D. Mass. Mar. 29, 2024) (without "facts sufficient to ascertain what the recordkeeping services paid for, the court cannot plausibly infer a breach based on excessive recordkeeping."); *Baumeister v. Exelon Corp.*, 2023 WL 6388064, at *5 (N.D. Ill. Sept. 29, 2023) (rejecting claim based on allegations that comparators offered "nearly identical" or "substantially similar" products because complaint "fail[ed] to provide any supporting facts for these conclusions."); *Mateya*, 2023 WL 4608536 , at *5 (S.D. Ind. June

[5] *See also, e.g., Matney*, 80 F.4th at 1157-58 (affirming dismissal where the plaintiff failed "to offer factual allegations about the services provided either by [defendant]'s plan or the [comparator] plans"); *Smith v. CommonSpirit Health ("Smith II")*, 37 F.4th 1160, 1169 (6th Cir. 2022) (affirming dismissal for failure to state that "fees were excessive relative to the services rendered"); *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022) (affirming dismissal where "the employees never alleged that these fees were high in relation to the services that the plan provided").

16, 2023) (dismissing similar recordkeeping claim and emphasizing that the comparator plans "purchased different mixes of services that intuitively cost different amounts"); *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 831 (N.D. Ill. 2023) (dismissing claim where the "complaint does not allege any facts regarding 'the quality or type of recordkeeping services' provided by the plans in the industry analyses"); *Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 267 (S.D.N.Y. 2023) (rejecting recordkeeper fees claims where complaint did "not allege[] what recordkeeping serviced the comparator plans received" and explaining that "allegation that all recordkeepers offer the same range of services does not mean that all plans employing a particular recordkeeper receive an identical subset of services within that range"); *Probst*, 2023 WL 1782611, at *10 (allegations that "all mega plans receive nearly identical recordkeeping services and that any difference in services was immaterial to the price … are wholly conclusory and do nothing to identify what specific types of services comparator plans received relative to the Plan"); *Riley v. Olin Corp.*, 2023 WL 371872, at *3 (E.D. Mo. Jan. 24, 2023) (rejecting "conclusory allegation[s]" that recordkeeping services were "virtually identical" and "recordkeepers in the marketplace offer the same range of services" because "without knowing what services the plans provided," allegations "do not provide information sufficient to plausibly allege that the compared funds are meaningful benchmarks"); *Fritton*, 2022 WL 17584416, at *6 (dismissing recordkeeping fee claims alleging "nearly all recordkeepers in the marketplace offer the same range of services"); *Sigetich*, 2023 WL 2431667, at *9 ("Plaintiff fails to give any context to the services rendered to the Kroger Plan or to the services rendered to her comparable plans which may lead to the inference that the Kroger Plan's recordkeeping fees were excessive relative to the services rendered."); *Guyes v. Nestle USA, Inc.*, 2022 WL 18106384, at *4 (E.D. Wis. Nov. 21, 2022), *report and recommendation adopted*, 2023 WL 22629 (E.D. Wis. Jan. 3, 2023) (dismissing claim lacking allegations "concerning the specific services performed by the comparator plans' recordkeepers" even though the complaint alleged the defendants "received a standard package of [recordkeeping] services.").[6]

Plaintiff's prudence-recordkeeping claim should be dismissed.

---

[6] *See also White v. Chevron Corp.*, 2016 WL 4502808, at *14-15 (N.D. Cal. Aug. 29, 2016) ("[T]he allegation that the Plan fiduciaries were required to solicit competitive bids on a regular basis has no legal foundation").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 22 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

**B.**     **Plaintiff Fails to State a Duty of Loyalty Claim Based on the Plan's Use of Unvested, Forfeited Contributions.**

Count II of the Complaint asserts that JMH violated its fiduciary duty of loyalty by reallocating forfeitures from unvested participants toward employer contributions. This claim likewise fails as a matter of law for several reasons.

ERISA's duty of loyalty provides that a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose" of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Plaintiff's allegation that JMH used Plan forfeitures to offset employer contributions does not state a claim under the statute.

First, a longstanding federal regulation expressly permits—and, in fact, seemingly requires—that forfeitures "*must be used as soon as possible to reduce the employer's contributions under the plan.*" 26 C.F.R. § 1.401-7(a) (emphasis added); *see also* Rev. Rul. 67-68, 1967-1 C.B. 86 (1967) ("The provisions requiring the use of forfeitures to reduce the employer's future contributions have the effect of preventing the use of forfeitures to increase benefits otherwise provided under the plans"). That is exactly what Plaintiff alleges the Plan here does. Significantly, this regulation has been in place since the 1960s, and ERISA requires plan fiduciaries to comply with it. 29 U.S.C. § 1144(d); *First Nat'l Bank of Chicago v. Comptroller of Currency of U.S.*, 956 F.2d 1360, 1368 (7th Cir. 1992) ("There can be no violation of ERISA itself" by following other federal regulations because ERISA "is explicit that it shall not be construed to invalidate or impair any federal regulation"). Moreover, the Treasury Department's guidance on this issue has been consistent. A 1971 IRS Revenue Ruling explained that defined contribution plans "may provide that forfeitures be used to reduce employer contributions that otherwise would be required under the contribution formula contained in the plan." Rev. Ruling 71-313, 1971-2 C.B. 203, 1971 WL 26693 (1971) (emphasis added). The Internal Revenue Manual also confirms forfeitures in a defined contribution plan may not "revert back to the plan sponsors," but rather "must be allocated to the remaining participants or used to reduce employer contributions that are otherwise required under the plan." IRM § 7.12.1.9, Forfeitures (02-16-2017), 2007 WL 9649931, also available at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 23 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

1    https://www.irs.gov/irm/part7/irm_07-012-001#idm139730277532416.

2    And as recently as 2018, the Treasury Department issued final regulations that expressly

3    "permit forfeitures of prior contributions to be used to fund" qualified matching contributions

4    ("QMACs") and qualified non-elective contributions ("QNECs"). 83 Fed. Reg. 34469, 34470 (July

5    20, 2018).   The Treasury Department even provided an example that is directly on point: "In the

6    2018 plan year, 5 employees terminated employment prior to being fully vested, resulting in

7    $20,000 of forfeitures.  For plan year 2018, Plan A may provide that the $20,000 in forfeitures will

8    be used as QNECs."  That is precisely what Plaintiff alleges the Plan did here.

9    Second, Plaintiff does not allege that Defendants violated the JMH Plan terms but rather

10   just some free-floating concept of "loyalty."  That omission sets this case apart from other cases

11   where the Department of Labor has raised concerns.  In *Walsh v. Allen*, DOL's theory of breach

12   under ERISA turned on the fact that the relevant plan document in that case prescribed different

13   treatment for forfeitures (offset of administrative expenses *before* matching contributions). The

14   *Allen* court agreed with the DOL because "[f]ailure to follow retirement-plan provisions regarding

15   the treatment of forfeitures can amount to a breach of fiduciary duties under ERISA." *Walsh v.*

16   *Allen*, 2022 WL 256312, at *1, *5 (W.D. Ky. Jan. 26, 2022).  No such claim is alleged here.

17   Third, and although Plaintiff tries to confuse the issue, the reason that the Treasury

18   Department allows forfeitures to be used this way is because using forfeitures as employer

19   contributions means (1) that those funds are used to pay benefits to participants and (2) that

20   participants are receiving all of the benefits to which they are entitled under the plan terms.

21   Notably, Plaintiff does not allege that he hasn't received the benefit amounts he was promised under

22   the JMH Plan terms.  To the contrary, JMH uses of Plan forfeitures to offset employer matching

23   contributions is in the interest of participants and provided benefits to participants.

24   Lastly, four of the seven allegedly "prudent" comparator plans Plaintiff relies on *also* use

25   forfeitures to pay for future company contributions in the same way the Plan does here. *See supra*

26   at section III.D.  In other words, JMH is using forfeitures the same way other prudent fiduciaries

27   are doing so.  There can be no fiduciary breach under these circumstances.

28   **C.     Plaintiff Fails to State a Plausible Failure-to-Monitor Claim.**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 24 -                    MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO

Count III and IV, Plaintiff's "failure to monitor" claims, likewise fail as a matter of law. "A failure to monitor claim is only viable when there is an underlying claim for breach of fiduciary duty." *Partida*, 2024 WL 1354432, at *9; *see also, e.g.*, *Bracalente*, 2023 WL 5184138, at *6 (dismissal of fiduciary-breach claim requires dismissal of monitoring claim).  Because Plaintiff's fiduciary-breach claims fail, his "tag-along" fiduciary monitoring claim fail with them.

## VI.    CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety under Rule 12(b)(6).

Dated:  June 7, 2024

MORGAN, LEWIS & BOCKIUS LLP

By   */s/ Jeremy P. Blumenfeld*
    Jeremy Blumenfeld
    Matthew J. Sharbaugh
    Brian W. Sullivan
    Thomas Duda

*Attorneys for Defendants*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 25 -

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-01632-AMO