MORGAN, LEWIS & BOCKIUS LLP
Thomas A. Duda (Bar No. 350991)
thomas.duda@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304-1124
Tel: +1.650.843.4000

MORGAN, LEWIS & BOCKIUS LLP
Matthew J. Sharbaugh (Bar No. 260830)
matthew.sharbaugh@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

Jeremy P. Blumenfeld (pro hac vice)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (pro hac vice)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

Attorneys for Defendants
JOHN MUIR HEALTH and BOARD OF
DIRECTORS OF JOHN MUIR HEALTH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CONAN NADO,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JOHN MUIR HEALTH, et al.,<br><br>　　　　　Defendants. | Case No. 3:24-cv-01632-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date: October 10, 2024<br>Time:　　　2:00 PM<br>Location:　　Courtroom 10, 19th Floor<br>Hon. Araceli Martínez-Olguín<br><br>Action Filed: March 15, 2024 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................1
II. ARGUMENT ..........................................................................................................3
    A. PLAINTIFF FAILS TO STATE A PLAUSIBLE RECORDKEEPING-FEE CLAIM ..........................................................................................................3
        1. Plaintiff's Claim Fails Under *White v. Chevron*. ....................................3
        2. The Complaint's Mismatched Fee Comparisons Doom Plaintiff's Claim. ....................................................................................4
        3. Plaintiff's Failure to Plead Asset Size for the Other Plans Precludes Any Finding of Meaningful Comparisons. ..............................5
        4. The Complaint Fails to Plead That Recordkeeping Fees Were Excessive Relative to the Service Provided. ............................................6
    B. PLAINTIFF'S FAILS TO PLAUSIBLY ALLEGE THAT JMH BREACHED THE DUTY OF LOYALTY BY THE PLAN'S USE OF UNVESTED FORFEITURES ........................................................................8
III. CONCLUSION .....................................................................................................10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chavez v. United States*,
   683 F.3d 1102 (9th Cir. 2012) ................................................................................................ 7

*Dionicio v. U.S. Bancorp*,
   2024 WL 1216519 (D. Minn. Mar. 21, 2024) ......................................................................... 6

*Fifth Third Bancorp. v. Dudenhoeffer*,
   573 U.S. 409 (2014). (Opp. .) ................................................................................................ 8

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022) ............................................................................................................... 8

*Hutchins v. HP Inc.*,
   2024 WL 3049456 (N.D. Cal. June 17, 2024) .......................................................... 2, 8, 9, 10

*Partida v. Schenker Inc.*,
   2024 WL 1354432 (N.D. Cal. Mar. 29, 2024) .................................................................. 2, 7

*Perez-Cruet v. Qualcomm Inc.*,
   2024 WL 2702207 (S.D. Cal. May 24, 2024) ........................................................................ 8

*Walsh v. Allen*,
   2022 WL 256312 (W.D. Ky. Jan. 26, 2022) ........................................................................ 10

*White v. Chevron Corp. ("White I")*,
   2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................................................................. 3, 4

*White v. Chevron Corp. ("White III")*,
   752 F. App'x 453 (9th Cir. 2018) .................................................................................. 1, 3, 4

**Statutes**

26 U.S.C. § 414(i) ......................................................................................................................... 9

**Other Authorities**

26 C.F.R. § 1.401-7(a) ................................................................................................................ 10

88 FR 12282, 12283 (Feb. 27, 2023) .......................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 10

H.R. Rep. No. 99-841, Vol. II (1986) ......................................................................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

I.      INTRODUCTION

Plaintiff's Opposition (the "Opposition") fails to demonstrate that the Complaint states any plausible claim for relief under ERISA, whether as to Plaintiff's claim for allegedly excessive recordkeeping fees or his claim attacking the Plan's use of forfeitures.

As to the recordkeeping-fee claim, the Opposition offers no meaningful response to the reality that *White v. Chevron Corp. ("White III")*, 752 F. App'x 453 (9th Cir. 2018), effectively decides this case. Plaintiff simply tries to nitpick around the edges by arguing that certain of his allegations are different from the ones at issue in *White III*. He is wrong, but even setting those points aside, Plaintiff misses the forest for the trees because the Ninth Circuit's rejection of the recordkeeping-fee claim in *White III* rested on the overall faulty premise of the claim—i.e., that allegations showing that a fiduciary "could have . . . sought lower fees for administration" do not suffice to establish that the fiduciary process was imprudent. *Id.* at 455. That is all the Complaint alleges here, no matter how forcefully Plaintiff tries to dress it up. *White III* controls.

But even beyond that general point, the specifics of Plaintiff's recordkeeping-fee claim fare no better. First, Plaintiff does not meaningfully dispute that the Complaint compares *all* the RKA fees paid by the JMH Plan against only *some* of the RKA fees paid by his preferred comparators. Plaintiff just says that JMH is "cast[ing] doubt" on his calculations, and then he doubles down on the same conclusory refrain that he is comparing "Total RKA fees" to "Total RKA fees." (Opp. at 12-13.) But simply saying something is so does not make it so. And as JMH established through the same judicially noticeable source documents that Plaintiff claims to have used for the calculations he relies upon, the Complaint ignores significant amounts of fees paid for "RKA services" provided to the comparator plans (as defined by Plaintiff himself in the Complaint). These unavoidable facts render Plaintiff's fee comparisons meaningless and his claim implausible.

Second, despite pleading *nothing* about the comparator plans' asset size and *nothing* about the specific recordkeeping services provided to the other plans, Plaintiff just argues that he does not have to do these things at the pleading stage. As to plan asset size, Plaintiff argues without any legal basis that plan asset size is irrelevant and need not be pleaded because the JMH Plan is so large that it defies comparison. But this argument fails for lack of supporting legal authority and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

the fact that Plaintiff's own Complaint acknowledges that at least some component of recordkeeping fees can be derived from asset-based revenue sharing, which necessarily depends on the amount of plan assets. As to Plaintiff's failure to plead any details about the specific recordkeeping services received by any plan, Plaintiff simply argues that his conclusory allegations that all services provided by all recordkeepers to all plans are "fungible" carry the day. But this argument is contrary to the governing pleading standards and numerous decisions, including this Court's recent decision in *Partida v. Schenker Inc.*, 2024 WL 1354432, at *8 (N.D. Cal. Mar. 29, 2024), which requires specific allegations demonstrating how fees paid by a given plan were excessive relative to the specific services provided. All in all, Plaintiff chose to plead his claim by way of comparison to other plans, and so it is incumbent on him to plead facts to show that his comparisons are meaningful and meaningfully presented. He flunks that burden many times over.

Separately, the Opposition fails to establish any plausible claim of fiduciary breach based on the Plan's alleged use of forfeitures. Plaintiff still does not argue that the JMH Plan's use of forfeitures to reduce JMH's matching contributions is contrary to the Plan document. Instead, Plaintiff perpetuates a swing-for-the-fences theory that ERISA fiduciaries can never use forfeited funds for that purpose but must instead *always* use them to pay plan expenses. Not only does Plaintiff fail to cite any authority so holding, but his argument is contrary to decades of settled law and regulations reflecting Congress and the Treasury Department's shared understanding that forfeitures can be applied to future matching contributions. Plaintiff's only answer is to argue that the regulations do not apply, but that argument misses the mark entirely. In short, even accepting Plaintiff's allegations as true—that JMH used forfeitures toward matching contributions—the Complaint fails to state any plausible claim of disloyalty based on this longstanding and long-sanctioned practice, as another Court in this District just recently held in rejecting this exact sort of claim. *Hutchins v. HP Inc.*, 2024 WL 3049456, at *5 n.1 (N.D. Cal. June 17, 2024).

For these reasons and those in JMH's opening brief, the Court should grant JMH's motion and dismiss the Complaint and this action in its entirety and with prejudice.

/ / /

/ / /

## II. ARGUMENT

### A. Plaintiff Fails to State a Plausible Recordkeeping-Fee Claim.

#### 1. Plaintiff's Claim Fails Under White v. Chevron.

As JMH explained (Motion at 16-17), Plaintiff's recordkeeping-fee claim fails out of the gate because it rests on the same allegations considered and rejected by the Ninth Circuit in *White III*. There, as here, the allegations "showed only that [the plan] could have … sought lower fees for administration[.]" *White III*, 752 F. App'x at 455. In his Opposition, Plaintiff says this case is distinguishable from *White III* in two ways, but both arguments miss the mark. First, he says that the Complaint here includes allegations that were supposedly missing in *White*, including as to "the amount of fees paid" by the JMH Plan, "what comparable plans" allegedly "pay for comparable services," and "that there are no facts suggesting a prudent process was in place to control cost." (Opp. at 6.) But those allegations were likewise present in *White III* and the Ninth Circuit still held them insufficient to state a claim.[1]

Specifically, the *White* complaint alleged that a "reasonable recordkeeping fee" based on "the recordkeeping market" would have been $25 per participant, while the Chevron plan allegedly paid "$167 to $181 per participant, resulting in millions of dollars in unreasonable recordkeeping fees paid to Vanguard." (*White* Complaint, Dkt. 20-11, ¶¶ 121-122). The *White* complaint also included a chart showing how much Vanguard (the plan's recordkeeper in that case) charged to provide recordkeeping services based on the number of participants, as well as pages of other allegations about the recordkeeping marketplace. (*Id.* ¶¶ 112-113, 116, 120-123, 125-129). Just

---

[1] JMH attached a copy of the amended complaint in *White* to its request for judicial notice, Dkt. 20-11. The entire thrust of the *White* complaint was the alleged absence of a "prudent process in place to control cost," so Plaintiff's suggestion that that allegation was lacking there is baseless. Plus, in making these arguments, Plaintiff cites the original complaint in *White*. (Opp. at 6 (citing *White v. Chevron Corp.*, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ("*White I*")).) But the plaintiffs in *White* filed an amended complaint, and the sufficiency of that amended complaint is what the Ninth Circuit considered on appeal in *White III*. The amended complaint included more specific allegations than *White I*, but the court still concluded that plaintiffs' fee estimate had "no factual basis" and included "a number of other fees paid . . . that [we]re unrelated to recordkeeping," such that plaintiffs did "not know what portion of the total fees actually relate[d] to recordkeeping." *White II*, 2017 WL 2352137, at *18, *aff'd*, 752 F. App'x at 452. As explained *infra*, Plaintiff's allegations here are likewise unreliable, incomplete, and inaccurate. *Infra* at 6.

by way of example the *White* complaint alleged:

> Exhibit 5: Compensation and Payment Schedule to Vanguard's own recordkeeping agreement for Plan recordkeeping services confirms the declining per-participant fee as the number of participants with account balances increases.

| ESIP Headcount-Based Fee Rate Variability – By Headcount | |
|---|---|
| **Headcount Range** | **Annual Fee Rate** |
| Below 26,001 | Renegotiate[1] |
| 26,001 – 32,000 | $25 per part |
| 32,001 – 39,000 | $24 per part |
| 39,001 – 43,000 | $23 per part |
| 43,001 – 47,000 | $23 per part |
| 47,001 – 52,000 | $22 per part |
| Over 52,000 | Renegotiate[1] |

\*\*\*

> To ensure that only reasonable fees are and continue to be paid for plan services, it is well-recognized that prudent fiduciaries of large defined contribution plans put the plan's recordkeeping and administrative services out for competitive bidding at regular intervals of approximately three years to determine the market price the plan is able to command for recordkeeping services.

(*Id.* ¶¶ 113, 120). The Complaint here does not allege any facts that were absent from the *White* complaint, and the result here should be the same.

Second, Plaintiff also argues that *White* is distinguishable because the defendants there "had ended the asset-based fee practice" challenged there four years before the case was filed. (Opp. at 6-7.) That is a distinction without a difference. The Ninth Circuit's rejection of the recordkeeping-fee claim in *White III* was not premised on the specific methodology that the plan used to pay recordkeeping fees or that the alleged fiduciary breaches were time-barred; there was no discussion of that at all. Rather, the issue was a more fundamental problem with the conceptual premise of the claim to begin with—simply claiming that other plans paid less for recordkeeping services does not show a fiduciary breach. *White III*, 752 F. App'x at 454. That takeaway holds here.

### 2. The Complaint's Mismatched Fee Comparisons Doom Plaintiff's Claim.

As JMH demonstrated (Motion at 11-14, 17-20), Plaintiff's recordkeeping-fee claim separately fails because it rests on a mismatched comparison of *all* of JMH's RKA fees to only *some* of the RKA fees paid by the other plans. Those are not meaningful comparisons, and certainly not ones that can support a plausible inference of an imprudent process with respect to RKA fees.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

Despite the centrality of this issue in JMH's moving papers—the issue was front and center throughout—the Opposition says almost nothing in response. Plaintiff does not dispute, for instance, that the Forms 5500 for several of the comparator plans report that the plan sponsor paid at least some of the Total RKA fees for those plans—separate and apart from any amounts paid by the plan, which is what Plaintiff calculates. Neither does Plaintiff dispute that those Forms 5500 report the comparator plans paying fees to other providers for services that fall within the Complaint's own definition of "RKA" services. These problems violate the Complaint's own rule that any comparison of fees must compare "all fees" paid to the recordkeeper. (Compl. ¶ 80.)

Plaintiff's only response to these problems is to minimize them as an attempt to "cast doubt" on the Complaint's comparative calculations about "Total RKA" fees. (Opp. at 13.) In fact, the judicially noticeable facts set forth in JMH's moving papers do far more than "cast doubt" on the calculations. Those documents render Plaintiff's conclusory allegations about how much those plans paid for "RKA" implausible. (Motion at 21.) Beyond that, Plaintiff doubles down on his conclusory assertion that he is comparing "Total RKA" fees to "Total RKA" fees. But that is nothing more than lip service. Plaintiff cannot simply retreat to that same refrain without offering some meaningful counter to the fact that his fee calculations omit substantial amounts of "Total RKA" fees for the comparator plans in many different respects, based on the Complaint's own definition of "RKA" services.

Plaintiff's veritable silence on this point speaks volumes. His flawed and mismatched comparator calculations do not and cannot come anywhere close to alleging a plausible claim.

### 3. Plaintiff's Failure to Plead Asset Size for the Other Plans Precludes Any Finding of Meaningful Comparisons.

Even if Plaintiff were comparing the "Total RKA" fees for the JMH Plan to the "Total RKA" fees for the other plans, he still fails to establish that the comparator plans are meaningfully comparable in the first place because the Complaint says nothing about the assets those plans hold as compared to the JMH Plan.

Plaintiff concedes this factual point, but he insists that it is irrelevant—i.e., that the amount of assets in any two plans does not matter when evaluating their comparability. (Opp. at 13-14.)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

1  That legal argument is flawed for several reasons.  First, it is contradicted by the allegations in the
2  Complaint.  The Complaint alleges that recordkeepers can often receive "asset-based compensation
3  for the recordkeeper," generally known as "revenue sharing," which amounts are directly related
4  to asset size and not simply the number of participants.  (Compl. ¶ 69.)  The Complaint also alleges
5  that a plan with bigger assets has "more bargaining power" to negotiate lower recordkeeping fees
6  than a smaller plan.  (Compl. ¶ 37.)  The Complaint even cites and quotes Department of Labor
7  ("DOL") guidance that a meaningful comparison of recordkeeping fees "should include the number
8  of plan participants *and the amount of plan assets* as of a specified date."  (Compl. ¶ 73 (emphasis
9  added).)  But the Complaint never alleges the amount of assets held by any of those comparator
10 plans for purposes of comparison.

11         Second, Plaintiff's argument is wrong as a matter of law.  Plaintiff ignores the cases cited
12 in JMH's brief that dismissed similar recordkeeping-fee claims because the comparison plans were
13 too disparate in terms of plan size.  (Motion at 20 (and cited cases).)  Instead, Plaintiff parrots back
14 language from a single out-of-circuit district court case to argue that JMH is advocating some
15 "goldilocks" standard of comparison.  (Opp. at 14 (citing *Dionicio v. U.S. Bancorp*, 2024 WL
16 1216519, at *3 (D. Minn. Mar. 21, 2024).))  Not so.  The point here, after all, is not that the asset
17 sizes of Plaintiff's other plans are too far apart from the asset sizes of the JMH Plan.  The point is
18 that Plaintiff does not even allege the underlying asset sizes whatsoever.  Even the complaint in
19 Plaintiff's proffered *Dionicio* case alleged the asset sizes of the comparator plans, and some of
20 those comparators were within *one percent* (1%) of the assets of the challenged plan, and therefore
21 "provided relatively close matches given the Plan's exceptional size."  *Id.*  Here, Plaintiff
22 conspicuously omits that data entirely, which deprives this Court of the ability to do the same.  For
23 the reasons JMH explained, this provides an independent basis for dismissing Plaintiff's
24 recordkeeping-fee claim, just as the myriad cases cited in JMH's opening brief dismissed the claims
25 in those cases for failure to plausibly allege comparators that were similar in size.

26         **4.   The Complaint Fails to Plead That Recordkeeping Fees Were Excessive
27              Relative to the Service Provided.**

28         Through its Motion (at 21-22), JMH explained through caselaw why the Complaint's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

exclusive reliance on sweeping and generalized allegations about the supposed fungibility of recordkeeping services provided to the JMH Plan and its comparators is insufficient to demonstrate that the JMH Plan paid excessive fees in relation to the recordkeeping services provided.  In Opposition, Plaintiff does not dispute the sweeping and generalized character of his allegations or deny his failure to allege any facts about the actual types or quality services received by the JMH Plan or any of its comparators.  (Opp. at 7-10.)  Instead, he simply disagrees with the need to do so, arguing that it would be tantamount to subjecting his claim to a "heightened pleadings standard." (Opp. at 10.)  This argument fails.

After all, this Court's own recent decision in *Partida* drives home the need for plaintiffs who choose to plead claims by way of comparative allegations, as here, to plead those comparisons in a way that makes them meaningfully comparative—by plausibly alleging that the "fees were excessive in relation to the *specific* services [] provided to the *specific* plan at issue." *Partida*, 2024 WL 1354432, at *8 (citing cases).  For his part, Plaintiff says the Complaint "here allege[s] exactly what *Partida* required" (Opp. at 8), but he fails to explain how that is so.  He certainly does not point to any factual allegations from the Complaint that outline the specific services that the JMH Plan received in exchange for the "Total RKA" fees it supposedly paid, nor the specific services that any of the other plans received in exchange for the "Total RKA" fees that it paid.  Instead, Plaintiff just says that the Court should accept all "RKA" services as fungible and entirely interchangeable, and then call it a day.  As the cases in JMH's brief explain, however, that approach fails because those "conclusory allegations are insufficient to state a claim."  *Partida*, 2024 WL 1354432, at *9 (citing *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir. 2012)).  This is particularly true considering that Plaintiff elsewhere asks the Court to ignore categories of services that fall within the Complaint's own definition of "RKA" services and the fees associated with those services, as explained above in Section II.A.2.  Plaintiff cannot simultaneously argue that all RKA services are fungible while also picking and choosing the types of RKA services and resulting fees that fit his narrative.

\* \* \*

Reviewing Plaintiff's recordkeeping-fee allegations "as a whole," as Plaintiff argues is

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

- 7 -

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

1  required by *Hughes v. Nw. Univ.*, 595 U.S. 170 (2022), reveals that Plaintiff's Complaint asks this
2  Court to infer a fiduciary breach (1) using lopsided and mismatched fee calculations that compare
3  *total* fees for RKA services paid by the Plan against just *some* of the fees paid by its alleged
4  comparators; (2) without any information on the respective sizes of the other plans being used for
5  comparison; and (3) based on the unsubstantiated assumption that the Plan and its comparators all
6  receive the same generic suite of "fungible" RKA services without any facts about what those
7  services actually are.  These allegations fail to provide any basis for this Court to plausibly infer
8  that Defendants breached their fiduciary duties with respect to their monitoring and management
9  of the Plan's recordkeeping fees.

        **B.     Plaintiff's Fails to Plausibly Allege That JMH Breached the Duty of Loyalty by the Plan's Use of Unvested Forfeitures.**

12          Plaintiff's argument in support of its forfeiture claims consists almost exclusively of a
13  reprint of the Complaint's allegations and citation to a single district court case that declined to
14  dismiss a similar claim at the pleadings stage.  (Opp. at 14-20 (citing *Perez-Cruet v. Qualcomm*
15  *Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024)).)  In a more recent case, however, another
16  Court in this District (Judge Freeman) held that *Perez-Cruit* was "not persuasive" because its
17  analysis on a similar forfeiture claim was "conclusory and does not directly address many of the
18  points made by Defendants in the motion to dismiss."  *Hutchins*, 2024 WL 3049456, at *5 n.1.
19  Plaintiff tries to distinguish this case as less "persuasive" than *Perez-Cruet* because it purportedly
20  employed an "inapplicable pleading standard" from *Fifth Third Bancorp. v. Dudenhoeffer*, 573
21  U.S. 409, 421 (2014).  (Opp. at 20.)  But the relevant reasoning in *Hutchins* does not depend on the
22  pleading standard in *Dudenhoeffer*, and the *Hutchins* court's detailed reasoning on many of the
23  same substantive arguments applies with full force here.

24          In *Hutchins*, this court rejected a forfeiture claim nearly identical to Plaintiff's.  There, as
25  here, "Plaintiff advance[d] a novel legal theory under which it is a breach of fiduciary duty to
26  allocate forfeited amounts to reduce employer contributions rather than to pay administrative
27  costs."  *Hutchins*, 2024 WL 3049456, at *5.  Again, as here, there was no dispute that using
28  forfeitures in this way did not violate plan terms.  *Id*.  *Hutchins* recognized that under Plaintiff's

theory, "a fiduciary is *always* required to choose to pay administrative costs" in "any context or circumstances." *Hutchins*, 2024 WL 3049456, at *6. The court identified two problems with this theory. First, the theory effectively argues that ERISA's fiduciary duties "create a benefit: the payment of [Plaintiff's] administrative costs," which benefit Plaintiff does not allege is required by the JMH Plan. *Id.* Nor does the statute create any "duty of maximizing pecuniary benefits," as ERISA's fiduciary duties "are found largely in the terms of the plan itself." *Id.* (citations omitted).

Second, "Plaintiff's theory of liability is contrary to the settled understanding of Congress and the Treasury Department regarding defined contribution plans," as both have long understood that forfeitures in defined contribution plans "could be reallocated to the remaining participants under a nondiscriminatory formula, used to reduce future employer contributions, or used to offset administrative expenses of the plan." *Id.* Because "the general provisions of the fiduciary duty provision of ERISA" neither "create a benefit to which Plaintiff is not entitled" nor "abrogate Treasury regulations and settled rules regarding the use of forfeitures in defined contribution plans," *Hutchins* rejected Plaintiff's forfeiture claim. The Court should do the same here.

Plaintiff's arguments that the cited Treasury regulations do not apply here are also unavailing.[2] To start, Plaintiff's argument that an amendment to the Internal Revenue Code (the "Code") "expressly contemplates that forfeitures . . . may be allocated to such participant's account" is not "irreconcilable" with contrary Treasury regulations. Instead, it simply defines the term "defined contribution plan" as a plan that is "based" on different funding sources, including contributions "and any income, expenses, gains and losses, and any forfeitures . . . *which may be allocated to such participant's account.*" 26 U.S.C. § 414(i) (emphasis added). This language does not conflict with the Treasury regulations or compel a different use of forfeitures; it merely defines what funds "*may*" be allocated to an individual's plan account.

Plaintiff also cites Congress's 1986 amendment of the Tax Code (Opp. at 20-21) but ignores its purpose: to "provid[e] uniform rules regarding the use of forfeitures under any *defined*

---

[2] The *Hutchins* court made clear that, even if the Treasury regulation does not apply, it was nevertheless "considered as persuasive authority in evaluating the plausibility of Plaintiff's claims." *Hutchins*, 2024 WL 3049456, at *4.

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

*contribution plan*." 88 FR 12282, 12283 (Feb. 27, 2023) (emphasis added).  As Congress made clear in 1986, "forfeitures arising in any *defined contribution plan* can be . . . used to reduce future employer contributions[.]" H.R. Rep. No. 99-841, Vol. II at 442 (1986) (emphasis added).  Plaintiff may argue that this legislative history has no legal effect, but that was not the point.  Neither Congress nor the IRS would state these positions if using forfeitures in this way violates ERISA.

Ultimately, the Opposition misses JMH's point about the settled law allowing the Plan's use of forfeitures.  Plaintiff jumps right into the weeds, arguing that 26 C.F.R. § 1.401-7(a) does not apply, nor do the IRS regulations or Tax Code.  These assertions are incorrect.  But more importantly, *not once* does Plaintiff dispute that JMH's use of forfeitures aligns with how Congress, the IRS, and everyone else has understood the law for decades. (Motion at 23-24.)  Not only has nothing prohibited this practice, but the IRS and Congress have expressly *authorized* it.  *Id.*; *Hutchins*, 2024 WL 3049456, at *6 (finding ERISA's "general provisions" do not "abrogate Treasury regulations and settled rules regarding the use of forfeitures").  In short, nothing in ERISA or anywhere else requires the contested forfeitures to be used to pay plan expenses, and nothing prohibits JMH's alleged practices in using those amounts toward matching contributions.

Finally, Plaintiff still does not argue or allege that the JMH Plan terms prohibit the use of forfeitures in this way, as was true in the only lawsuit that the DOL has brought with respect to forfeitures used for purposes of matching contributions.  (Motion at 24 (citing *Walsh v. Allen*, 2022 WL 256312 (W.D. Ky. Jan. 26, 2022)).)  This is all the more reason that Plaintiff fails to plausibly allege a breach.  Instead, the far more plausible inference is that JMH is acting entirely consistently not only with the settled legal and regulatory framework on this issue, but also the Plan itself.[3]

**III. CONCLUSION**

For these reasons and those set forth more fully in JMH's opening brief, the Court should dismiss the Complaint and this action in its entirety under Rule 12(b)(6).

---

[3] Plaintiff also concedes that many of the other comparator plans that the Complaint holds up as supposedly "prudent" comparators with respect to recordkeeping fees likewise use forfeitures in this same way.  (Opp. at 17 n.4.)  Although certainly not dispositive, this is even more anecdotal information to show that the alleged practice that Plaintiff challenges in connection with the JMH Plan is broadly used and widely accepted as proper for the reasons stated.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO

| | |
|---|---|
| Dated:  July 19, 2024 | MORGAN, LEWIS & BOCKIUS LLP |
| | By  */s/ Jeremy P. Blumenfeld* |
| | Jeremy P. Blumenfeld |
| | Matthew J. Sharbaugh |
| | Brian W. Sullivan |
| | Thomas A. Duda |
| | *Attorneys for Defendants* |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -

REPLY RE: MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:24-cv-01632-AMO