UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONAN NADO,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN MUIR HEALTH, et al.,<br><br>        Defendants. | Case No. 24-cv-01632-AMO<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 45 |

Before the Court is Plaintiff's unopposed motion for preliminary approval of settlement in this ERISA putative class action. ECF 46. Because the motion was suitable for decision without oral argument, the Court vacated the motion hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1. Having reviewed the motion and the arguments made therein, as well as the relevant legal authority, the Court hereby **GRANTS** the motion for the following reasons.

**I.    BACKGROUND**

On March 15, 2024, Plaintiff Conan Nado filed this action on behalf of himself and similarly situated participants and beneficiaries of the John Muir Health 403(b) Plan ("the Plan") against Defendants John Muir Health ("John Muir") and the Board of Directors of John Muir Health ("Board") (collectively, "Defendants"). Compl. (ECF 1) ¶ 1. Defendants are fiduciaries under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, because they exercise discretionary authority or discretionary control over the Plan, which it sponsors and provides to its employees. Compl. ¶ 1. Nado alleges that during the putative class period – March 15, 2018 through the date of judgment – Defendants breached the duties owed to the Plan and Plan participants by paying excessive recordkeeping and administrative service fees and misallocating Plan forfeitures. Nado asserts four causes of action: two claims for breach of

1  fiduciary duty of prudence and two claims for breach of fiduciary duty of loyalty. Compl. ¶¶ 193-
2  222. The parties reached a settlement prior to class certification with the assistance of a mediator,
3  retired Magistrate Judge Morton Denlow, and the instant motion followed on November 15, 2024.
4  Motion for Preliminary Approval ("Mot.") (ECF 45) at 7.

**II.   DISCUSSION**

The Court first summarizes the terms of the parties' proposed settlement agreement before considering whether preliminary approval and the proposed notice plan are proper.

**A.   Terms of the Settlement**

Under the terms of the parties' settlement agreement, Defendant will pay $950,000 to a common settlement fund. Proposed Class Action Settlement Agreement ("Settlement") (ECF 47-1) § 1.25. This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, and the class representative's service award. *Id.* The Settlement provides that Plaintiff's counsel may request no more than one-quarter of the gross settlement amount – not to exceed $237,500 – and no more than $35,000 in litigation and settlement administration costs. Settlement §§ 1.5, 7.1. The Settlement also provides for a case contribution award of up to $5,000, at the Court's discretion. Settlement §§ 1.5, 7.1.

After accounting for attorneys' fees and costs, administrative expenses, independent fiduciary fees, and case contribution awards, the net settlement amount will be distributed to the estimated 43,895 eligible class members. Settlement §§ 5.2.1-5.2.6. For class members who have an account with a positive balance in the Plan as of the date class members' shares of the Settlement are calculated, the distribution will be made into their account in the Plan. Mot. at 8. Class members who no longer have an account in the Plan shall be issued a check, unless their share is under ten dollars, in which case they will not receive any share of the fund. *Id.* It is estimated that approximately 7,000 class members are current participants with balances, while 34,000 are former participants. Secunda Decl. ¶ 3. If checks are not cashed, the Settlement provides that those unclaimed funds will revert to the Plan to defray administrative expenses and benefit class member Plan participants. Settlement § 5.6. The Settlement also provides for non-monetary relief. Within two years of the Settlement Effective Date, Defendants shall conduct a

2

request for proposal for Plan recordkeeping services. Settlement § 6.1. In exchange for the foregoing relief, approval of the Settlement will release Defendants from all claims as described in the Settlement. Settlement §§ 8.1-8.6.

### B. Preliminary Approval of Class Action Settlement

Under Federal Rule of Civil Procedure 23, settlement agreements that will bind absent class members must be approved by a court. Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). In reviewing the proposed settlement, a court does not need to conclude that the settlement is ideal or the best outcome, but rather whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Accordingly, courts may "neither rubberstamp the settlement nor unduly meddle in the parties' affairs." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (2025).

Courts considering whether to approve a class action settlement agreement employ a two-step process. First, if the class action has settled prior to class certification, the court determines whether it is appropriate to certify the class, then it makes a "preliminary determination" that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008); *see also* Manual for Complex Litigation, Fourth § 21.632 (FJC 2004). If the court certifies the class and preliminarily approves the settlement, it must then "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The second step is to hold a hearing pursuant to Rule 23(e)(2) to make a final determination that the settlement is "fair, reasonable, and adequate." When parties settle prior to class certification, courts invoke "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)," *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012), which "ensure[s] that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent," *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

//

3

**1. Class Definition and Conditional Certification**

The Settlement Agreement defines the class as:

All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO [qualified domestic relations order] who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are the current and former members of the John Muir Health Retirement Committee during the Class Period.

Settlement § 1.46. Class certification requires that a plaintiff satisfy Rule 23(a)'s four requirements – numerosity, commonality, typicality, and adequacy – and one of the bases for certification in Rule 23(b). Here, Nado has satisfied the requirements of Rule 23(a) and 23(b)(1).

### a. Rule 23(a)

First, as for the numerosity requirement of Rule 23(a)(1), the Settlement Class includes approximately 43,895 members, Secunda Decl. ¶ 3, making it so numerous that joinder of all members is impracticable.

Second, Rule 23(a)(2) commonality requires that there be "questions of fact or law common to the class." "What matters . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The answers to the questions raised by the claims in this action – whether the Plan's recordkeeping and administrative fees were excessive, whether Plan forfeitures were allocated correctly by the Plan fiduciaries, whether Defendants breached their fiduciary duties to the Plan, and whether the Plan suffered losses from the fiduciary breaches – are common to all class members. *See Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-CV-05596-JST, 2015 WL 5569462, at *3 (N.D. Cal. Sept. 22, 2015) (finding commonality where "Plaintiffs' challenge . . . entail[ed] consideration of questions applicable to all members of the class as a group, and d[id] not require an inquiry into the actions and circumstances of individual plan participants."). Thus, Nado has established Rule 23(a)(2) commonality.

Third, Rule 23(a)(3) requires Nado to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement aims to

4

"assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To determine whether typicality exists, courts should determine "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Nado is typical of the class because he and the class members challenge Defendants' management of the Plan, so their "claims are based on the same legal theory." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511 (N.D. Cal. 2007).

Fourth, Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." This requirement "tend[s] to merge" with the commonality and typicality requirements of Rule 23(a), *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997), which Nado has satisfied. The purpose of this requirement is to ensure "the interests of the class members will be fairly and adequately protected in their absence" and to consider "competency and conflicts of class counsel." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, n.13 (1982). There are no signs of conflict between Nado, his counsel, and the proposed class, nor is there any suggestion Nado or his counsel would not continue to competently represent the class through resolution of this matter. Thus, the adequacy requirement is satisfied.

### b. Rule 23(b)

In addition to satisfying the four Rule 23(a) requirements, the proposed class must satisfy one of the Rule 23(b) requirements. Nado argues that certification under Rule 23(b)(1) is appropriate, either under Rule 23(b)(1)(A) or Rule 23(b)(1)(B). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). Under Rule 23(b)(1)(A), class certification is proper where separate actions by individual class members would risk "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Nado has shown this, as there are over 40,000 individuals who were or are members of the Plan,

and each of them could file an individual suit challenging Defendants' management of the plan. *See Reyes*, 2015 WL 5569462, at *4 (concluding plaintiffs satisfied Rule 23(b)(1)(A) where thousands of potential plaintiffs could individually file suit for damages arising from the same conduct, which would "create a risk of 'inconsistent and varying adjudications' ") (citing *Kanawi*, 254 F.R.D. at 111). Because the Court finds certification under Rule 23(b)(1)(A) is proper, it need not address whether Nado also satisfies Rule 23(b)(1)(B). *See Reyes,* 2015 WL 5569462 at *4 (declining to address whether plaintiffs also satisfied Rule 23(b)(1)(B) or Rule 23(b)(2) where the court determined plaintiffs had satisfied Rule 23(b)(1)(A)); *see also Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 164 n.226 (N.D. Cal. 2015). Because the proposed class satisfies Rule 23(a) and Rule 23(b)(1), the Court grants Nado's motion for conditional certification.

### 2. The Settlement Agreement Appears Fair and Reasonable

Having determined that class certification is proper, the Court must next determine whether the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d at 674-75. Preliminary approval is appropriate where a court makes an initial finding that (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). As discussed below, each of these factors is met.

#### a. Adequate Representation

First, the Court must determine whether the class representatives and class counsel have adequately represented the class. Counsel has litigated dozens of cases involving retirement plans, including cases involving ERISA violations by healthcare institutions, Secunda Decl. ¶¶ 14-15, demonstrating experience and competence. This is an "indication that Plaintiff[] ha[s] adequately represented the class." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 376 (N.D. Cal. 2021) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.")). Nado, too, has "take[n] [his] duties as a class representative seriously," including by reviewing allegations in the complaint and the Settlement and providing

1    information and documents to counsel, demonstrating his participation in the prosecution of the

2    case. Nado Decl. ¶ 4. Thus, the first factor is met. *See In re Google LLC St. View Elec.*

3    *Commc'ns Litig.*, 611 F. Supp. 3d 872, 890 (N.D. Cal. 2020), *aff'd sub nom. In re Google Inc. St.*

4    *View Elec. Commns Litig.*, 21 F.4th 1102 (9th Cir. 2021) (finding adequate representation where

5    plaintiffs "vigorously represented the class" by providing information and evidence and where

6    "counsel are experienced class action litigators").

### b. Arm's Length

Class action settlements present the risk that "class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). For that reason, courts must not approve a settlement that shows signs of collusion or fraud, suggesting the agreement was not reached as a product of arm's length negotiation. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Courts look for three "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations," *id.*, including "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *Bluetooth*, 654 F.3d at 947). Where these "subtle signs" are present, the proposed settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required." *Bluetooth*, 654 F.3d at 946.

First, it does not appear that counsel will receive a disproportionate distribution of the settlement. The Settlement provides that counsel may request up to one-quarter of the gross settlement amount. Settlement § 1.5. Counsel may also request reimbursement for costs and expenses, not to exceed $35,000. *Id.* Courts deciding whether to award attorneys' fees and costs in a common fund case may choose either the lodestar method or the percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Twenty-five percent of a

7

common fund is the benchmark under the percentage-of-recovery method, *see Bluetooth*, 654 F.3d at 942, so the first "subtle sign" is not present here. *See Cottle*, 340 F.R.D. at 376-77 ("The court will address the exact amount of fees to be awarded in the order for final approval. At this stage, however, it does not appear that counsel will receive a disproportionate share of the settlement.").

The second "subtle sign" is when a settlement agreement includes a "clear sailing" arrangement, under which the defendant agrees not to challenge a request for agreed-upon attorneys' fees. Though Defendants do not oppose the motion for preliminary approval, any awarded attorneys' fees will come from the settlement fund. Settlement §§ 5.2.1-5.2.6. Thus this is not a "clear sailing" arrangement. *See Bluetooth*, 654 F.3d at 947 (noting a "clear sailing" arrangement exists where the parties agree the payment of attorneys' fees will be "separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class' ").

The third "subtle sign" is a "kicker" or "reverter" clause providing that unawarded attorney fees be returned to the defendant, rather than the class. The Settlement provides that the unclaimed funds from uncashed checks will revert to the Plan to defray administrative expenses and benefit class member Plan participants, and the Plan as a whole. Settlement § 5.6. Where a settlement provides for a reversion of unclaimed funds, plaintiff should "provide an explanation why [that] is appropriate." *Dudum v. Carter's Retail, Inc.*, No. 14-CV-00988-HSG, 2015 WL 5185933, at *3 (N.D. Cal. Sept. 4, 2015). Nado explains that reversion is appropriate here because "practically speaking, the amount of the Settlement Fund that reverts due to uncashed checks is typically so small that dividing it *pro rata* among Class Members is not administratively feasible." Mot. at 9. This is "a sufficient basis to find that full briefing" in the motion for final approval "could support the reasonableness of the terms discussed." *Dudum*, 2015 WL 5185933, at *3. The court may also consider the means through which the parties reached settlement in determining whether the settlement is the product of collusion or fraud. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) (citing Manual for Complex Litigation (Fourth) § 21.6 (2004)). Here, the parties participated in a full day of mediation with Retired

Judge Morton Denlow, and such use of a mediator "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *see also Reyes v. Bakery and Confectionary Union and Inudstry Int'l Pension Fund*, No. 14-cv-5596-JST, 2017 WL 7243239 (N.D. Cal. 2017). In sum, the Court finds no "subtle signs" of collusion or fraud and thus concludes the Settlement was made at arm's length.

### c. Fair and Adequate Terms

Rule 23(e)(2)(C) requires that the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) (which requires that "the parties seeking approval must file a statement identifying any agreement made in connection with the proposal").

First, the proposed settlement amount is $950,000. Settlement § 1.46. Plaintiff estimates that the total alleged estimated loss was approximately $6.9 million. Secunda Decl. ¶ 4. Thus, the settlement amount represents 13.7 percent of the total estimated losses. *Id.* This is consistent with other ERISA class actions that allege similar claims. *See* Mot. at 15 (collecting cases); Exhibits 2-3 (ECF 46-2, ECF 46-3). The Settlement also provides for injunctive relief. Within two years of the Settlement Effective Date, Defendants will conduct a request for proposal for Plan recordkeeping services. Settlement § 6.1. Nado notes that for class members in their 40s and younger, even a one percent reduction in Plan fees each year could result in tens of thousands of dollars of savings over decades. Mot. at 14-15 (citing a Department of Labor resource explaining the long-term impact of reducing plan fees). Consequently, this settlement is significant, and without it, Plaintiff would have faced risks, costs, and delays in pursuing further litigation. The Court may have dismissed the case on summary judgment, and if not, there would be the risk that resolution and distribution of funds would take years due to lengthy appeal processes in complex ERISA cases such as this one. Mot at 15; *see Gruber v. Grifols Shared Servs. North America, Inc.*, 2023 WL 8610504, at *8 (N.D. Cal. Nov. 2, 2023) (noting the settlement amount was fair,

9

particularly in light of ongoing litigation risks, including the risks of a summary judgment ruling in defendant's favor or a long appeal process before any funds could be distributed).

Second, the proposed method of distributing relief to the class is effective. The Settlement provides that current Plan participants will have their Plan accounts automatically credited with their share of the Settlement, and former Plan participants will receive their share by check. No class member will have to complete a claim form. Third, as discussed above, the Settlement limits the amount class counsel can request in attorneys' fees, and that limit is reasonable. Finally, as required by Fed. R. Civ. P. 23(e)(2)(C)(i), the Settlement states that no other agreement has been made in connection with the proposed settlement. *See* Settlement § 15.20 ("This Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties . . . ."). In sum, application of the Rule 23(e)(2)(C) factors indicates the settlement amount and distribution plan are fair and adequate.

### d. Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to determine whether "the proposal treats class members equitably relative to each other." Here, that is the case, as the Settlement provides that the fund amount will be distributed among class members on a *pro rata* basis using the same formula to calculate payments for all class members – both current and former Plan participants. *See* Mot. at 16-17; Proposed Allocation Plan (ECF 47-3); *see also De La Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ, 2017 WL 2670699, at *9 (N.D. Cal. June 21, 2017) (finding a *pro rata* distribution plan did "not favor certain Class Members over others"); *Rubio-Delgado v. Aerotek, Inc.*, 2015 WL 3623627, at *8 (N.D. Cal. June 10, 2015) ("Every class member will be treated equally, and have an equal opportunity to claim a pro rata share of the settlement fund.").

Because the Rule 23(e)(2) factors have been satisfied, the settlement is preliminarily approved, and the Court next considers the parties' proposed plan for notifying the class.

### C. Notice Plan

Where a court preliminarily approves a settlement, it must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The "best notice" practicable under the circumstances includes individual notice to all class

members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Nado's proposed notice is adequate, as it sufficiently informs class members of the terms of and their rights under the Settlement, how to object, how to receive payment, and details regarding the final approval hearing. *See* Proposed Class Notice (ECF 47-2); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.' "). Nado's notice plan is also adequate. Notice will be mailed to all class via U.S. mail, and the settlement administrator will attempt to identify updated mailing addresses for any class members whose initial notice is returned as undeliverable and remail the notice to that address. Simmons Decl. (ECF 49) ¶¶ 12, 21. The notice features conspicuous messages on the outside indicating the mail is an important court document, and the body of the notice provides a summary and question-and-answer section designed to make it easy for readers to understand key information and their options. Simmons Decl. ¶¶ 34-36. In addition to receiving mailed notices, class members will be able to access the notice via a website and can request that a notice be mailed to them via a toll-free telephone line. Simmons Decl. ¶¶ 13, 21. Class members will also be able to call the telephone line to listen to pre-recorded answers to frequently asked questions at any time and speak to a call center agent during business hours. Simmons Decl. ¶ 24. Considering the fact that the settlement class members are known and addresses are available for nearly all of them, Simmons Decl. ¶ 16, the Court agrees this plan is "reasonably calculated" to notify class members of the settlement and their rights. *Mullane*, 339 U.S. at 314.

As for the settlement administrator, Nado obtained multiple competing bids from potential administrators, and ultimately selected Analytics Consulting LLC as it offered the lowest cost for the materially same settlement administration services, had more experience with ERISA fee cases than the other bidders, and had been used in a number of other ERISA class settlements. Secunda

Decl. ¶¶ 28-30.

The proposed notice plan is therefore approved.

## III.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Nado's motion and **ORDERS** as follows:

1. A hearing (the "Fairness Hearing") shall be held before this Court on December 11, 2025, at 2:00 p.m. at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 10, 19th Floor, to determine: (a) whether the Court should approve the Settlement as fair, reasonable, and adequate; (b) whether the Court should enter the Final Approval Order; and (c) whether the Court should approve any motion for attorneys' fees and costs, administrative expenses, and case contribution award.

2. The Court approves and orders that Analytics Consulting, LLC, shall be the Settlement Administrator responsible for carrying out the responsibilities set forth in the Settlement.

   a. The Settlement Administrator shall use the data provided by Defendants and the Plans' recordkeeper solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

   b. The parties shall have the right to approve a written protocol to be provided by the Settlement Administrator concerning how the Settlement Administrator will maintain, store, and dispose of information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information and provided by this District's Data Protection Checklist.

3. The following Settlement Class is preliminarily certified for settlement purposes only pursuant to Fed. R. Civ. P. 23(b)(1):

   > All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are the current and former members of the John Muir Health Retirement Committee during the Class Period.

   The Court appoints Conan Nado as representative for the Class and appoints Walcheske & Luzi, LLC and Schneider Wallace Cottrell Konecky LLP, as counsel for the Class.

4. The Court approves the text of the settlement notice, which is the proposed form of notice regarding the Settlement for mailing to Class Members. ECF 47-2.

    a. The Settlement Administrator shall send by first-class mail the appropriate Settlement Notice to each Class Member within forty-five (45) calendar days of the date of this Order, based on data provided by the Plan's recordkeeper. The Settlement Notices shall be sent to the last known address of each Class Member provided by the Plan's recordkeeper (or its designee), unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known addresses provided by the Plan's recordkeeper (or its designee). The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and resend such documents one additional time.

    b. On or before the date that the Settlement Notice is sent to the Settlement Class, the Settlement Administrator shall establish a Settlement Website and telephone support line as provided by the Settlement Agreement. The Settlement Administrator shall post a copy of the Settlement Notice on the Settlement Website.

5. The Court approves the form of the Class Action Fairness Act ("CAFA") Notice attached as Exhibit E to the Settlement Agreement and orders that upon mailing of the CAFA Notices, Defendants shall have fulfilled their obligations under CAFA.

6. Any objections to any aspect of the Settlement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been timely and properly filed with the Clerk of Court. To be timely, the objection and any supporting documents must be sent to the Court at least fourteen (14) calendar days prior to the scheduled Fairness Hearing. Any person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to participate within the time limitation set forth above.

7. Any party may file a response to an objection by a Class Member at least seven (7) calendar days before the Fairness Hearing, and Class Counsel shall file a motion for entry of the Final Approval Order (as defined in the Settlement Agreement) at least sixty (60) calendar days before the Fairness Hearing. Class Counsel shall file their motion seeking approval of the

1  Attorneys' Fees and Costs, Administrative Expenses, and Case Contribution Award no later
2  than sixty (60) days prior to the Fairness Hearing.
3  8. Until this Court determines whether or not to finally approve the Settlement Agreement, no
4  Class Member may, directly, through representatives, or in any other capacity, commence any
5  action or proceeding in any court or tribunal asserting any of the Released Claims against
6  Defendants, the Released Parties, and/or the Plan as set forth in the Settlement Agreement.
7  9. The Court may adjourn, modify, or continue the Fairness Hearing without further direct notice
8  to the Class Members, other than by notice via the Court's docket or the Settlement Website.

**IT IS SO ORDERED.**

Dated: June 20, 2025

*[signature]*

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**